UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Deborah Ward,

                             Debtor.
------------------------------------------------------------x

                   Case No.: 8-16-72793-las

                   Chapter 7

## MEMORANDUM DECISION AND ORDER

This matter is before the Court on the objection of the chapter 7 trustee, Robert L. Pryor Esq., to the homestead exemption claimed by the debtor in her residence located at 17 Laurelton Avenue, Lake Grove, New York ("Lake Grove Property") pursuant to 11 U.S.C. § 522(b),[1] New York Debtor and Creditor Law § 282,[2] and New York Civil Practice Law and Rules § 5206,[3] and Bankruptcy Rule 4003(b). Specifically, the trustee asserts that the debtor cannot claim a homestead exemption because prior to filing her bankruptcy case she entered into a contract to sell the Lake Grove Property. This, according to the trustee, establishes that the debtor did not intend to permanently reside at the Lake Grove Property on the date she filed for bankruptcy, a prerequisite, he asserts, to claiming a homestead exemption under § 522(b)(3) and CPLR § 5206. Although the debtor acknowledges that she entered into a contract to sell the Lake Grove Property, she takes a different view of the applicable statutory requirement. The debtor argues that the Lake Grove Property was her principal residence on the date she filed her bankruptcy petition and nothing in CPLR § 5206(a) requires that a debtor manifest an intent for long-term or permanent residency beyond the petition date as

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will hereinafter be referred to as "§ (section number)".

[2] All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "NYDCL § (section number)".

[3] All statutory references to New York Civil Practice Law and Rules will hereinafter be referred to as "CPLR § (section number)".

a condition precedent to claiming the homestead exemption. The debtor therefore contends that she is entitled to the claimed homestead exemption.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

The Court has considered carefully the arguments of counsel and has reviewed thoroughly the parties' pre and post hearing submissions. This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rules 9014 and 7052. To the extent a finding of fact includes a conclusion of law, it is deemed a conclusion of law, and vice versa.

For the following reasons, the Court finds in favor of the debtor. Accordingly, the trustee's objection to the homestead exemption is overruled and the exemption is allowed.

I.    Background

    A.  Procedural History

On June 24, 2016, the debtor filed a chapter 7 bankruptcy petition together with all of the required schedules and statements. [dkt. no. 1]. In her schedule A/B (property), she identified as her only real property her residence at 17 Laurelton Avenue, Lake Grove, New York, i.e., the Lake Grove Property. In schedule C (property claimed as exempt), the debtor claimed a homestead exemption under CPLR § 5206 in the Lake Grove Property in the amount of $125,713. [dkt. no. 1]. The trustee filed an objection to the debtor's claimed homestead exemption and subsequently moved to assume a contract to sell the Lake Grove

Property entered into by the debtor prepetition. [dkt. nos. 11 and 12]. The debtor opposed. [dkt. no. 19]. At the initial hearing on the trustee's objection, the trustee argued for the first time that the debtor's interpretation of the New York homestead exemption law violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. At the Court's direction, the parties filed supplemental pleadings on the trustee's Fourteenth Amendment claim. [dkt. nos. 24 and 25]. The trustee served a copy of his Memorandum of Law and Notice of Claim of Unconstitutionality Pursuant to E.D.N.Y. LBR 9005-1 upon the Attorney General of the State of New York ("NY Attorney General"). [dkt. no. 26]. The Court also certified the matter to the NY Attorney General, setting a deadline for the NY Attorney General to intervene should it choose to do so. [dkt. no. 31]. The NY Attorney General did not intervene nor file any response to the trustee's claim of unconstitutionality. The parties then continued to file unsolicited pleadings and responses. [dkt. nos. 35, 36, 38, 40, 41, 42, and 44]. The Court held a status conference on February 6, 2018 and requested additional briefing on the effect of the contract to sell the Lake Grove Property and the purported termination of that contract by the buyer. The parties timely submitted their respective pleadings. [dkt. nos. 47, 48, and 51]. Once the issues were fully briefed, the Court held oral argument on March 6, 2018.[4]

B.  Factual Background[5]

As noted above, on June 24, 2016, the debtor filed a chapter 7 bankruptcy petition and all of the required schedules and statements. [dkt. no. 1]. On page 2 of the debtor's bankruptcy petition, in response to question 5 (where you live), she listed the Lake Grove Property. In response to question 6 (venue) on page 2 of her bankruptcy petition, the debtor

---

[4] The parties did not request an evidentiary hearing nor seek to present testimony or documentary evidence.

[5] The relevant facts are undisputed unless otherwise noted.

represented that for the 180-day period prior to the filing of the petition, she has lived in this district longer than in any other district. Additionally, in response to question 2 in her statement of financial affairs, the debtor stated that during the three-year period prior to the petition date she has lived solely at the Lake Grove Property. In schedule A/B (property), the debtor listed as her only real property her residence, i.e., the Lake Grove Property, with a current value of $366,371. The Lake Grove Property is encumbered by a mortgage held by Island Federal Credit Union having a balance as of the petition date of $240,658. *See* schedule D (secured claims). In schedule C (property claimed as exempt), the debtor claimed a homestead exemption under § 522(b)(3) and CPLR § 5206 in the amount of $125,713, the difference between the value listed for the Lake Grove Property in schedule A/B and the amount of the mortgage debt listed in schedule D.

Prior to the petition date, the debtor had negotiated a contract to sell the Lake Grove Property for $389,000. *See* Residential Contract of Sale. [dkt. no. 12-2]. The contract provided for a $20,000 down payment which the debtor has acknowledged receiving, and a closing date of June 1, 2016. The contract of sale was not listed by the debtor in her schedule G (executory contracts and unexpired leases), and the copy provided to the Court is not dated nor signed by the debtor. Accounting for the debtor's mortgage obligation as of the petition date ($240,658), a sale of the Lake Grove Property for $389,000 would result in gross proceeds of $148,342 prior to any closing costs. The sale of the Lake Grove Property did not occur prior to the petition date and the purchaser has since terminated the contract.[6]  The debtor has returned the downpayment to the purchaser. Because the sale did not close before the debtor filed her bankruptcy petition, there is no question that the debtor resided at the Lake Grove

---

[6] The parties dispute whether there was a valid termination of the contract. The Court need not, and does not, address this issue as it is not outcome-determinative of the threshold issue of whether the debtor, having entered into a contract prepetition, is entitled to claim an exemption in her home.

Property as of the petition date and has continued to reside there during the pendency of her chapter 7 case.

### C.  The Trustee's Objection

The trustee contends that in order for the debtor to claim a homestead exemption in her principal residence under CPLR § 5206(a), she must show (i) ownership, (ii) occupancy, and (iii) an intent to reside there permanently. In the trustee's view, the debtor cannot establish the third element because by entering into a contract prepetition to sell her home, she lacks the requisite intent to reside at the property on a permanent basis.

The trustee also contends that the New York State exemption law as set forth in CPLR § 5206(a) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), *superseded by statute on other grounds*. The focus of the trustee's Fourteenth Amendment claim is that a debtor claiming a homestead exemption in the cash proceeds from a voluntary sale of her home is treated differently from a similarly situated debtor who elects not to claim an exemption in her home, but rather opts to claim the more limited cash exemption provided under NYDCL § 283(2). The trustee argues that the homestead exemption under CPLR § 5206 is meant to preserve a debtor's homestead from an involuntary seizure by a judgment creditor, not to protect cash proceeds from a voluntary sale of a debtor's home. The trustee notes that NYDCL § 283(2) limits the cash exemption to $5,000 for a debtor who does not own real property and therefore exempts cash or, despite owning a homestead, elects not to claim the homestead exemption. In the trustee's view, no rational basis exists to allow a

debtor to claim a homestead exemption of $165,550[7] in the cash proceeds from the voluntary sale of her home. To do so, he alleges, treats a selling debtor differently from other similarly-situated debtors who opt to exempt cash, rather than claim the homestead exemption. Those claiming the cash exemption are capped at $5,000, a far cry from the amount a debtor may claim as a homestead exemption. The selling debtor is thus able to exempt cash well in excess of the allotted cash exemption under NYDCL § 283(2) and that, according to the trustee, results in disparate treatment. In sum, the trustee contends that the application of CPLR § 5206(a) to the proceeds of a voluntary sale violates the Equal Protection Clause.

Lastly, although the trustee recognizes that the purpose of the New York homestead exemption is to protect a debtor and her family from an involuntary sale of her home by a money judgment creditor, that public policy is not, according to the trustee, furthered when a debtor voluntarily seeks to sell her home prepetition. The trustee argues that an intent to sell prepetition means that at the time of the bankruptcy filing a debtor lacks the intent to reside in the home permanently. It is that lack of intent, he asserts, that leaves a debtor ineligible to claim the homestead exemption under CPLR § 5206. The trustee maintains that if the New York homestead exemption does not apply to the proceeds of a voluntary sale by a debtor outside of bankruptcy, then there is no basis for allowing the exemption if a debtor closes on a voluntary sale of her residence during the bankruptcy case. According to the trustee, the timing of the sale should not lead to an inconsistent result. If the closing occurs a day before the bankruptcy filing, the proceeds of sale are not protected by the homestead exemption. That outcome, the trustee urges, should not change if a debtor intends to sell her

---

[7] At the time the debtor filed her bankruptcy petition, the New York homestead exemption for property in Suffolk County, the locale of the Lake Grove Property, was $165,550. That amount has since increased to $170,825. As noted, here the debtor claimed a homestead exemption of $125,713.

home prior to filing for bankruptcy even though she resides there on the petition date and the sale closes postpetition.

### D.  The Debtor's Opposition

The debtor contends that intent to reside at one's primary residence is measured as of the petition date. According to the debtor, any decision on her part to sell the Lake Grove Property postpetition does not change the fact that she owned and occupied the Lake Grove Property as her permanent residence on the petition date. That, the debtor urges, is all that is required to claim the homestead exemption under CPLR § 5206(a). In short, the debtor insists that the statute does not require as a condition to claiming the homestead exemption that a debtor show an intent for long-term or permanent residency beyond the petition date. Additionally, the debtor points out that the trustee's view is contrary to established precedent in this district as courts have uniformly upheld a debtor's right to the homestead exemption where a debtor entered into a contract of sale prepetition but the sale closed post-petition.

Addressing the trustee's Fourteenth Amendment claim, the debtor argues that the cash exemption permitted under NYDCL § 283(2) bears no relation to whether a debtor may properly claim the homestead exemption. The debtor points out that the cash exemption is available only if a debtor elects not to claim the homestead exemption. In this respect, the debtor draws a distinction between a homeowner and a lessee, focusing on the attributes of home ownership and the policy behind the homestead exemption. The debtor asserts that the homestead exemption encourages ownership and is designed to protect the homeowner from the involuntary seizure of the family dwelling and from thereby becoming a ward of the state. According to the debtor, an individual acquires residential real property with the intent of long-term occupancy and invests substantial assets and resources in the property with the expectation that she will reap the financial benefit of any appreciation in value. On the other hand, a lessee only has a short-term interest; has invested, at most, a security deposit and

first month's rent; and has no right to share in any appreciation in the value of the property during the lease term. Thus, the debtor maintains that the trustee's Fourteenth Amendment claim fails because there is a rational basis for any perceived difference in the treatment of an individual debtor who chooses the homestead exemption and an individual debtor who foregoes the homestead exemption in favor of the cash exemption under NYDCL § 283(2).

## II.  Discussion

### A.  Burden of Proof

The trustee bears the burden of proving, by a preponderance of the evidence, that the debtor's claimed homestead exemption is improper. *See* Fed. R. Bankr. P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."); *In re Bellafiore*, 492 B.R. 109, 113 (Bankr. E.D.N.Y. 2013). *See also Fido's Fences, Inc. v. Bardonaro*, No. 15-CV-3025 (JMA), 2015 WL 7738020, at *3 (E.D.N.Y. Nov. 30, 2015) (stating that a "party objecting to a debtor's claim of an exemption bears the burden of proving, by preponderance of the evidence, that the exemption is improper"). "'The burden of showing something by a preponderance of the evidence … simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence ….'" *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (*quoting Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)).

### B.  Exemption Laws in Bankruptcy

"The commencement of a case … creates an estate." 11 U.S.C. § 541(a). The estate consists of the property identified in § 541(a)(1)-(7). In a chapter 7 case, the bankruptcy trustee collects and sells property of the estate, *see* 11 U.S.C. § 704(a)(1), and the proceeds from the sale of property of the estate are distributed in accordance with the statutory scheme set forth in § 726. Under § 522(b)(1), an individual debtor is permitted to exempt certain

property from the bankruptcy estate.[8] If properly claimed, exempt property is not available to pay the claims of certain creditors during the bankruptcy case and, with limited exceptions, after the bankruptcy case as well. *See* 11 U.S.C. § 522(c). Section 522(b)(1) provides that an individual debtor may exempt what is allowed under applicable state exemption laws plus certain additional exemptions, *see* 11 U.S.C. § 522(b)(3), or what is allowed under the federal exemptions unless applicable state law precludes its residents from claiming the federal exemptions listed under § 522(d), *see* 11 U.S.C. § 522(b)(2). Section 522(b)(2) contains what is commonly referred to as the "opt-out" provision. Under the "opt-out" provision a debtor may not elect the federal exemptions under § 522(b)(2) if "the State law that is applicable to the debtor … specifically does not so authorize." New York is not an "opt-out" state and therefore a New York debtor is allowed to exempt property under New York and federal nonbankruptcy law or elect the federal exemptions.

The rationale for protecting certain property from creditor claims provides a debtor with some comfort that he or she will not be impoverished and emerge from bankruptcy with a fresh start.[9] "Exemptions prevent a debtor from losing everything. They also promote a debtor's fresh start after the bankruptcy discharge because the debtor will be able to use the exempt property to aid in financial rehabilitation." *In re Little*, No. 05-68281, 2006 WL 1524594, at *3 (Bankr. N.D.N.Y. Apr. 24, 2006).

---

[8] Section 522(b)(1) provides, in part, that "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph 2 or, in the alternative, paragraph 3 of this subsection." 11 U.S.C. § 522(b)(1).

[9] "Current state and federal exemption laws promote five distinct social policies. Each specific exemption should further one or more of the following policies: (1) To provide the debtor with property necessary for his physical survival; (2) To protect the dignity and the cultural and religious identity of the debtor; (3) To enable the debtor to rehabilitate himself financially and earn income in the future; (4) To protect the debtor's family from the adverse consequences of impoverishment; (5) To shift the burden of providing the debtor and his family with minimal financial support from the society to the debtor's creditors." Alan N. Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy*, 31 RUTGERS L. REV. 615, 621 (1978).

The bankruptcy "fresh start" policy is at the heart of the bankruptcy system. "[T]he principal purpose of the Bankruptcy Code is to grant '"fresh start"' to the '"honest but unfortunate debtor."' *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (*quoting Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). While the bankruptcy discharge is most often associated with the fresh start policy, exemptions are also a critical component of this basic bankruptcy principle. Absent such protection, all of a debtor's property would be liquidated by the chapter 7 trustee and used to satisfy creditor claims. Exemption laws, therefore, strike a necessary balance between the need of a debtor to protect her family from impoverishment and the need for general creditors to receive a distribution – property claimed as exempt is excluded from the bankruptcy estate and kept by a debtor even though creditors are not paid. *See Clark v. Rameker*, 573 U.S. 122, 129 (2014) (exemptions "effectuate a careful balance between the interests of creditors and debtors."). As stated by the Supreme Court, "exemptions serve the important purpose of protect[ing] the debtor's essential needs." *Id.* (internal quotation marks and citation omitted). Mindful of this vital purpose of protecting a debtor's essential needs, courts construe exemptions liberally. "Exemption statutes are to be construed liberally in the favor of a debtor." *In re Apergis*, 539 B.R. 24, 28 (Bankr. E.D.N.Y. 2015) (*quoting In re Moulterie*, 398 B.R. 501, 504 (Bankr. E.D.N.Y. 2008)). *See also Santiago-Monteverde v. Pereira (In re Santiago-Monteverde)*, 24 N.Y.3d 283 (N.Y. 2014).

C.  The New York Homestead Exemption

The debtor has elected to exempt what is allowed under New York and federal nonbankruptcy law, *see* debtor's schedule C (property claimed as exempt). In so doing, the debtor has claimed the homestead exemption under New York law, *see* NYDCL § 282 and CPLR § 5206. The New York homestead exemption allows a debtor to exempt his or her

interest in real property not exceeding a specified dollar amount[10] in value above liens and encumbrances, that is "owned and occupied as a principal residence" from the application of a money judgment, unless the judgment was recovered wholly for the purchase price of the property (i.e., a mortgage foreclosure). CPLR § 5206(a). The rationale behind New York's homestead exemption is a clear and long standing one. New York has provided a homestead exemption since 1850 in order to protect a homeowner from a forced sale of his or her dwelling to satisfy a money judgment. *CFCU Cmty Credit Union v. Hayward*, 522 F.3d 253, 260 (2d Cir. 2009).

> The statute is founded upon considerations of public policy, and has introduced a new rule in regard to the extent of property which shall be liable for a man's debts. The legislature were of opinion, looking to the advantages belonging to the family state in the preservation of morals, the education of children, and possibly even, in the encouragement of hope in unfortunate debtors, that this degree of exemption would promote the public welfare, and perhaps in the end, benefit the creditor.

*Robinson v. Wiley*, 15 N.Y. 489, 494 (N.Y. 1857) (Opn. of Johnson, J.). *See also Hayward*, 552 F.3d at 260.

Exempt property is determined as of the petition date. *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991). "The 'snapshot rule' of bankruptcy law holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events." *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384, 386 (5th Cir. 2014). Accordingly, to determine whether a debtor is entitled to a homestead exemption, courts look to the debtor's ownership and occupancy of the homestead as of the petition date. *Apergis*,

---

[10] The $150,000 homestead exemption set forth in CPLR § 5206(a), (d) and (e) for property located in the counties of King, Queens, New York, Bronx, Richmond, Nassau, Suffolk, Rockland, Westchester and Putnam, is subject to adjustment every three years by the New York State Superintendent of the Department of Financial Services. The homestead exemption for property located in Lake Grove (Suffolk County) was $165,550 at the time the debtor filed her bankruptcy case. As noted above, the current dollar amount of the homestead exemption for real property in Suffolk County is $170,825.

539 B.R. at 28; *In re Martinez*, 392 B.R. 530, 531 (Bankr. E.D.N.Y. 2009); *Fontana v. Fontana*, 89 A.D.2d. 843, 453 N.Y.S.2d 23, 24 (N.Y. App. Div. 1982).

The trustee urges the Court to read into the occupancy requirement an intent by a debtor to permanently reside at the subject property. Citing to *In re Bace*, 364 B.R. 166, 182 (Bankr. S.D.N.Y. 2007), *rev'd sub nom. on other grounds*, *Bace v. Babitt (In re Bace)*, No. 07 Civ. 2421 (WHP), 2008 WL 800672 (S.D.N.Y. Mar. 25, 2008), the trustee contends that intent to reside at the homestead requires "a bona fide intent to reside there as one's principal residence – not in the future, but on the petition date." Mar. 6, 2018 Hr'g Tr. at 12:6-10. He maintains that since the debtor entered into a contract prepetition to sell the Lake Grove Property, the requisite intent to reside there permanently is lacking and the debtor may not under these circumstances claim the homestead exemption. The Court disagrees. The trustee's position has been rejected by bankruptcy courts in the Second Circuit. "Nothing in C.P.L.R. § 5206(a) even suggests that the homestead exemption is to be conditioned on an intent for long-term residency. Rather, the statute allows an exemption to any owner who resides on the property on the date of bankruptcy." *In re Martiny*, 378 B.R. 52, 53 (Bankr. W.D.N.Y. 2007). *See also Bellafiore*, 492 B.R. at 114; *Apergis*, 539 B.R. at 28. Additionally, bankruptcy courts in this circuit have been steadfast in holding that a debtor is entitled to the homestead exemption despite having entered into a prepetition contract of sale so long as the debtor owned and occupied the homestead on the petition date. *Martiny*, 378 B.R. at 53; *Bellafiore*, 492 B.R. at 114. "There is no reason why this post-petition voluntary sale should be any different from any other sale of a debtor's residential real property conducted during the course of a bankruptcy proceeding. The [d]ebtor's fresh start should not be penalized as a result of the existence of a pre-petition contract negotiated on an arms-length

basis where the [d]ebtor still owned and occupied the homestead on the [p]etition [d]ate." *Bellafiore*, 492 B.R. at 115-116.

Courts consider a debtor's intention only when a debtor owns and occupies more than one residence. *Apergis*, 530 B.R. at 28 ("Genuine questions of intent may arise where a debtor's actual occupancy is dubious, or in some way insufficient to show that a property is being used as a primary residence"); *In re Estate of Galcia*, 59 Misc.2d 511, 299 N.Y.S.2d 723 (N.Y. Sup. Ct. 1969) (holding that a vacation home does not qualify as homestead property). While a debtor may own more than one residence, she can have but one principal residence for purposes of the homestead exemption. In short, intent is a factor in a multiple residence setting to determine which property is used by a debtor as her principal residence. As the bankruptcy court in *Bace* noted:

> absent special circumstances justifying a constructive presence, … actual physical occupancy of the property, along with ownership, on the petition date is a prerequisite to the exemption claim. And, relatedly, an owner cannot have more than one "principal" residence; the debtor's principal residence is the one the debtor occupied as of the petition date, as his or her homestead, on a more regular basis than any other residence.

*Bace*, 362 B.R. at 182 (internal citations omitted). Thus, in a multiple residence setting, in order to claim the homestead exemption as to one of the properties, a debtor must show that as of the petition date (a) she owned and occupied the property at issue and (b) the property at issue was her "principal" residence as that is where she resided on a more regular basis than any other place. To establish the latter, a debtor must demonstrate: (i) actual physical occupancy on a regular basis, and (ii) an intent to reside permanently in a dwelling. *Apergis*, 530 B.R. at 28.

To meet the first criteria, actual physical occupancy on a regular basis, the debtor's occupancy at the subject property must be more regular at that location than at any other.

*Id.* With respect to the second criteria, the intention to reside permanently in a dwelling, a debtor's intention need not be long-term. *Id.* (*citing Bellafiore*, 492 B.R. at 114). In essence, the inquiry regarding intent is relevant only where the court is asked to determine which of several properties owned by a debtor constitutes her principal residence at the time of the bankruptcy filing. That is different from the case where a debtor has but one residence, owned and occupied by her as of the bankruptcy filing date, and there is no question it constitutes her principal residence for purposes of claiming the homestead exemption.

Cases in the Second Circuit relied upon by the trustee to support his argument that intent to reside at one's dwelling permanently is a prerequisite to claiming the homestead exemption all concerned situations where the debtor owned and/or occupied more than one property. *In re Bordonaro*, Case No. 14-70190-reg, 2015 Bankr. LEXIS 4433, at *9 (Bankr. E.D.N.Y. Mar. 11, 2015) (finding debtor was entitled to a homestead exemption in 1705 North Gardiner Drive, Bay Shore, New York ("1705 Property") where creditor failed to demonstrate that the debtor did not physically occupy the 1705 Property or that the debtor occupied property at 1707 North Gardiner Drive more regularly than he did the 1705 Property)*, aff'd, Fido's Fences, Inc. v. Bordonaro,* No. 15-CV-3025 (JMA), 2015 WL 7738020; *In re Stanley*, 461 B.R. 161 (Bankr. E.D.N.Y. 2011) (finding the debtor intended to reside at the Queens County property permanently even though she did not change the address on her driver's license to that of the Queens County residence until after the petition date where her Suffolk County residence was the subject of a foreclosure action and the debtor had agreed to sell the Suffolk County residence pursuant to a separation agreement); *In re Moulterie*, 398 B.R. 501 (finding the debtor, who left the homestead due to marital strife and had not resided there for fourteen months, was still entitled to a homestead exemption as his family continued to reside at the property); *Bace*, 364 B.R. 166 (denying debtor a homestead exemption for real property in Ulster County - even though debtor intended to make it his homestead - when he

resided in New York City on the petition date, visited the Ulster County property only for two to three months during the summer, and had no certificate of occupancy, no running water, and no insurance for the structures on the Ulster County property); *In re Miller*, 103 B.R. 65 (Bankr. N.D.N.Y. 1989) (finding debtor not entitled to take homestead exemption for vacation property in the Town of Macomb when debtor resided in Herkimer, New York and referred to the Herkimer property as his residence); *In re Scott*, 233 B.R. 32 (Bankr. N.D.N.Y. 1998) (finding debtor did not have the intent to reside at vacant land located in Skaneateles, NY when (i) the debtor occupied the property for only two days prior to the petition date but then continued to reside in the evenings in Elbridge, NY after the petition date, and (ii) the Skaneateles property lacked ordinary necessities, such as access to utilities, running water and a septic system, and debtor had done nothing to repair or mitigate these deficiencies). *See also In re Issa*, 501 B.R. 223 (Bankr. S.D.N.Y. 2013) (finding that debtor did not intend to reside in property in which she claimed a homestead exemption when she had not lived there for 7 years; and notwithstanding the debtor's assertion that the alleged homestead was inhabitable, the debtor did nothing to maintain or repair the premises).

In further support of his argument that intent to reside permanently is a condition to allowance of the homestead exemption, the trustee cites to cases outside the Second Circuit, *In re Hankel*, 223 B.R. 728 (Bankr. D.N.D. 1998) and *In re Lee*, 223 B.R. 594 (Bankr. M.D. Fla. 1998). The court in *Lee* looked at intent where the debtor fraudulently conveyed his seasonal vacation home to his relatives to avoid the attachment of a judicial lien against the property. The property was conveyed back to him prior to the petition date. In his bankruptcy case, the debtor sought to claim the vacation property as exempt even though he was often absent from the property because he was a watermelon farmer and lived in a different county during the watermelon farming season. The court found sufficient evidence of intent by the debtor to make the seasonal home his principal residence where the debtor's absence was due

to work, and the debtor undertook efforts to establish a residence in the seasonal home by applying for an *ad valorem* tax exemption with respect to the property, changing the address of his driver's license, moving into a mobile home located on the property, and remaining at the property overnight since the bankruptcy filing. Thus, the debtor had two residences but demonstrated sufficient intent to make the seasonal home his principal residence.

In *Hankel*, the debtor occupied the property for years and did not reside at any other place. However, the debtor did not have a present ownership interest in the property, but rather held a future, residual interest after his mother's life estate in the property ended. The bankruptcy court found that the debtor's remainder interest and lack of present ownership did not disqualify him from taking the homestead exemption under North Dakota law where the only requirement is that a debtor live on the property intending that it be his home and permanent place of abode.

Additionally, the trustee cites to *In re Santiago*, No. 11-12843 ALG, 2012 WL 393405 (Bankr. S.D.N.Y. Feb. 6, 2012), in support of his argument that the homestead exemption does not apply to the proceeds of a prepetition contract of sale. A reading of *Santiago*, however, reveals that the case turns not on a sale after the bankruptcy filing, but on the fact that the sale occurred prepetition. The debtor in *Santiago* sold her residence nine months prior to the petition date, thereby reducing her interest in her former homestead to cash proceeds prepetition. The *Santiago* court held that CPLR § 5206(a) did not apply because there was a voluntary sale prepetition and no homestead existed on the petition date. The Santiago court also concluded that CPLR § 5206(e) did not apply because that section deals with the conditional exemption of sale proceeds from an involuntary sale of the homestead by a judgment creditor for a period of one year to allow a judgment debtor to reinvest the proceeds in another homestead. In short, the facts in *Santiago* are not akin to the facts in

this case where a sale of the debtor's homestead, i.e., the Lake Grove Property, has not yet occurred.

The trustee's argument that the homestead exemption is subject to a showing of intent to permanently reside in the homestead as of the bankruptcy filing date is reasonable but, in the end, unconvincing. The Court finds instructive the well-reasoned and thoughtful opinions of the bankruptcy courts in the Second Circuit that have addressed the issue of whether a debtor may claim the homestead exemption in the face of a prepetition contract to sell the homestead that has not closed at the time the bankruptcy case is filed. *See Martiny*, 378 B.R. at 53; *Belllafiore*, 492 B.R. at 114, 115-116. Accordingly, under New York exemption law, where a debtor owns and occupies a single residence as of the petition date, the issue of intent to reside there permanently is not determinative of whether the debtor has met the requirement of ownership and occupancy sufficient to claim the homestead exemption. The existence of a prepetition contract of sale is immaterial if the debtor still owns and resides at her principal residence on the petition date, the very basis for a homestead exemption in New York. The debtor's "clear intent to sell, in the future, without more, cannot establish a present abandonment of her homestead. The converse is equally true. The mere intention of future occupancy is not sufficient to constitute a homestead." *Bernstein v. Held (In re Bernstein)*, 62 B.R. 545, 549 (Bankr. D. Vt. 1986) (rejecting a judgment lienor's argument that a debtor was not entitled to a homestead exemption under Vermont law where the debtor had entered into a prepetition contract of sale and thus abandoned her homestead even though she still resided at the property on the petition date).

As noted above, by its very terms, CPLR § 5206(a) does not require as a condition to a debtor claiming the homestead exemption an intent for long-term or permanent residency beyond the petition date. To find otherwise, to wit, that intent to permanently reside in one's principal residence beyond the petition date is outcome determinative of whether a debtor

may claim the homestead exemption, would supplant a clear, bright-line rule with one that is (i) imprecise and arbitrary, and (ii) without any criterion as to what constitutes requisite intent, when the intent arose, and how long must that intent last. For example, if a debtor prepetition signed a listing agreement with a real estate broker or a binder to sell her principal residence but changed her mind and later filed for bankruptcy relief – is the listing agreement or binder sufficient to form an intent to abandon the homestead? *Id.*, 62 B.R. at 549. And suppose a debtor prepetition entered into contract to sell her principal residence but the sale failed to close (whether due to an adverse inspection, mortgage contingency or title issue) and the debtor postpetition decided to remain in the home. In both examples, the debtor owns and occupies a single homestead which is her "principal residence" as of the bankruptcy filing date. Yet, under the trustee's reasoning he may sell the home free of any homestead exemption simply because the debtor, in his view, could not have intended to reside in the home on a permanent basis. This is so, he contends, despite any change of heart by the debtor in her relocation plans or circumstances that prevented the closing of the sale prepetition. The Court does not agree. That outcome undermines the distinct social policies of why we have exemption laws in the first place and countermands the protection given a debtor and her family from a forced sale of the homestead.

D.  Fourteenth Amendment Claim

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws."  The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike. But so too, the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotations and citations omitted.)

When the state legislation concerns a social or economic policy, the state is given wide latitude. *Cleburne Living Center*, 473 U.S. at 440 (1985). "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonable conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). *See also Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680-81 (2012) (A law will be found constitutionally valid if there is a plausible policy reason for the distinct classification, the classification is rationally based, and the relationship of the classification to the purpose of the legislation is not so tenuous as to render the distinction arbitrary or irrational). Thus, a state statute or policy is presumed to be constitutional so long as the classification is "rationally related to a legitimate state interest". *Cleburne Living Center*, 473 U.S. at 440 (*citing Schweiker v. Wilson*, 450 U.S. 221, 230 (1981)). *See also In re Goering*, 23 B.R. 1010, 1014 (Bankr. N.D. Ill. 1982) (A statute that discriminates in favor of a certain class does not render it arbitrary if the discrimination is founded upon "a reasonable distinction or difference in state policy".).

Because the classification by the state is presumed to be valid, the party challenging the government classification bears the burden "to negative every conceivable basis which might support it." *Armour*, 566 U.S. at 681. *See also Beach Commc'ns, Inc.*, 508 U.S. at 314-15 (the party attacking the constitutionality of a Federal law pursuant to the Equal Protection Clause of the Fourteenth Amendment has the burden of proof).

Exemption laws allow an individual to exempt, i.e., keep, property free from the claims of certain creditors. The exemption laws identify property, such as a homestead, that a debtor keeps even though her creditors are not paid in full or not paid at all. This, as noted above, furthers public policy and advances the individual debtor's fresh start. The exempt property is protected from administration in the debtor's chapter 7 case and exemptions, together with

the discharge, enables the individual debtor to provide for her and her family while she recovers financially and avoids the adverse consequences of impoverishment. There can be no dispute that CPLR § 5206, which permits the individual debtor to claim the homestead exemption, is rooted in New York's public policy of preserving a debtor's homestead for the benefit of her and her family, allowing the debtor to obtain a fresh start and preventing the debtor and her family from becoming a ward of the state. The disparate treatment between a homeowner and a tenant under a residential lease is rationally based. In fact, New York increased the amount of the homestead exemption in 2005 from the $10,000 set in 1977 to $50,000, and then increased the amount again in 2010 to $150,000 for homesteads located in the counties of Kings, Queens, New York, Bronx, Richmond, Nassau, Suffolk (where the Lake Grove Property is located), Rockland, Westchester and Putnam in order to account for rising home values.[11] *1256 Hertel Ave. Assocs., LLC v. Calloway,* 761 F.3d 252, 257 (2d Cir. 2014). The amount of the New York homestead exemption is subject to adjustment every three years and, as noted earlier, was $165,550 at the time the debtor filed her bankruptcy case. *See* www.dfs.ny.gov/legal/legal_notices.htm dated April 2, 2018. The increase in the amount of the homestead exemption reflects the accompanying increase in the cost of securing residential housing.

If an individual debtor does not take the homestead exemption under CPLR § 5206, NYDCL § 283(2)[12] allows a cash exemption which, at the time the debtor filed for bankruptcy

---

[11] The 2010 amendment to CPLR § 5206 became effective January 11, 2011.

[12] NYDCL § 283(2) provides a contingent alternative bankruptcy exemption in that:

> Notwithstanding section two hundred eighty-two of this article, a debtor, who (a) does not elect, claim, or otherwise avail himself of an exemption described in section fifty-two hundred six of the civil practice law and rules; (b) utilizes to the fullest extent permitted by law as applied to said debtor's property, the exemptions referred to in subdivision one of this section which are subject to the ten thousand dollar aggregate limit; and (c) does not reach such aggregate limit, may exempt cash in the amount by which ten thousand dollars exceeds the aggregate of his or her exemptions referred to in subdivision one of this

relief, was an amount not exceeding $5,525. Over the years, the upward adjustment provided by the Dept. of Financial Services for the cash exemption is *de minimis* when compared to the adjustments made to the homestead exemption.[13] A renter or a homeowner with little or no equity would likely not avail herself of the homestead exemption, preferring instead to keep the cash permitted under NYDCL § 283(2) free from the reach of creditors and free from the administration of her chapter 7 bankruptcy case. It is this distinction which the trustee says gives rise to his Fourteenth Amendment claim. Because the Equal Protection Clause directs that "all persons similarly situated should be treated alike," *see Cleburne Living Ctr.*, 473 U.S. at 439, the trustee argues that CPLR § 5206 violates the Equal Protection Clause because a debtor claiming the homestead exemption in the cash proceeds of a voluntary sale of her home is treated differently from a similarly situated debtor who avails herself of the more limited cash exemption under NYDCL § 283(2).

To meet his burden of proof on his Fourteenth Amendment claim, the trustee must prove that this alleged disparate treatment is without any rational basis. This, he cannot do. As noted, the trustee's challenge requires the Court to apply a rational basis scrutiny, *see Cleburne Living Ctr.*, 473 U.S. at 440; *Beach Commc'ns, Inc.*, 508 U.S. at 313. Here, the Court finds the state policy of allowing an individual debtor to keep cash proceeds from the voluntary sale of her homestead postpetition is rationally related to a legitimate state interest, to wit, the protection of a debtor and her family from the adverse consequences of impoverishment and the need for public assistance. For this reason, the Court denies the trustee's equal protection challenge and finds that there is a rational basis for any perceived difference in the treatment of a debtor claiming the homestead exemption under CPLR § 5206

---

section or in the amount of five thousand dollars, whichever amount is less.

[13] The exemption for cash under NYDCL § 283(2)(c) increased from $5,000 to $5,250 in 2012, and to $5,525 in 2015 which was the permitted amount at the time the debtor filed for bankruptcy relief.

in the cash proceeds of a voluntary sale of her home and a debtor who foregoes the homestead exemption and instead avails herself of the more limited cash exemption under NYDCL § 283(2).

E. Voluntary Sale of the Homestead in Bankruptcy

The trustee maintains that because the New York homestead exemption under CPLR § 5206(a) does not apply to the proceeds of a voluntary sale of a debtor's principal residence outside of bankruptcy, then there is no basis for allowing the exemption if a debtor closes on a voluntary sale of her residence during her bankruptcy case. Outside of bankruptcy, the New York "homestead exemption ceases if the property ceases to be occupied as a residence by a person for whose benefit it may so continue, except where the suspension of occupation is for a period not exceeding one year, and occurs in consequence of injury to, or destruction of, the dwelling house upon the premises." CPLR § 5206(c). In short, the trustee reasons that if the applicable state statutory scheme does not protect cash proceeds from the voluntary sale of the homestead before bankruptcy, commencement of the bankruptcy case should not change that result.

The Court does not agree. First, the trustee's argument ignores the "snapshot rule" of bankruptcy law that exemptions are determined as of the petition date, *see Owen*, 500 U.S. at 314, and do not change by reason of subsequent events, *see Frost*, 744 F.3d at 386. In deciding whether a debtor has properly claimed the homestead exemption under New York law, the court's focus is on whether the debtor owned and occupied the homestead as of the petition date. *See Apergis*, 539 B.R. at 28; *Martiny*, 392 B.R. at 531.

Second, the trustee's argument that bankruptcy law may not affect state homestead exemptions overlooks the federal limitations placed on state homestead exemptions. In three separate instances, the Bankruptcy Code caps the amount of the state homestead exemption. See § 522(o), (p) and (q). Although the facts before the Court do not include the circumstances

addressed by these limiting provisions of the Bankruptcy Code, it is instructive that bankruptcy law does indeed alter the scope and amount of state homestead exemptions.

Third, the trustee's position does not consider yet another section of the Bankruptcy Code that affects state exemption law. When a debtor has elected to have her exemptions determined under applicable state and nonbankruptcy federal law, we look to the Bankruptcy Code to determine which state law is the applicable law. *See* § 522(b)(3). Section 522(b)(3) addresses the concern raised by the "wandering debtor" – the debtor who changes her residence before filing for bankruptcy in order to take advantage of more favorable exemptions offered in the state she claims as her domicile as of the bankruptcy filing date. This section governs which state law applies and will serve to preclude a debtor from taking advantage of a state's more generous exemptions. Thus, if a debtor lived in more than one state during the 730-day period prior to filing her bankruptcy case, and elects to claim exemptions under applicable state and nonbankruptcy federal law, § 522(b)(3) provides that her exemptions will be determined by the law of the state where she resided for 91 of the 180 days prior to the 730-day period and not by the law of the state of her current domicile.

Fourth, the trustee's argument fails to recognize the import of § 522(c). Section 522(c) provides, in part, that "[u]nless the case is dismissed, property exempted under this section is not liable *during or after* the case for any debt of the debtor that arose, or that is determined under section 502 of [the Bankruptcy Code] as if such debt had arisen, before the commencement of the case." 11 U.S.C. § 522(c) (emphasis added). Thus, subject to exceptions contained in subparagraphs (1)-(4) of paragraph (c), property that is properly claimed as exempt is kept by the debtor free of the claims of certain creditors both during and after the

bankruptcy case.[14]  In keeping with the "snapshot rule" noted above, courts will generally not consider subsequent events when asked to determine whether a debtor has properly claimed an exemption for purposes of applying § 522(c). *See, e.g., In re Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008) (proceeds from postpetition sale of exempt homestead did not lose exempt status); *In re Gamble*, 168 F.3d 442, 445 (11th Cir. 1999) (chapter 13 trustee may not hold onto exempt property in the event the case was ultimately dismissed and must turnover exempt property to the debtors).

In *Cunningham*, the First Circuit held that proceeds from the postpetition sale of the debtor's homestead remained exempt and thus unavailable to satisfy the claim of a creditor's prepetition, nondischargeable debt.

> By the plain language of the statute, exemptions under § 522(c) persist beyond the termination of the case, making the property subject to an exemption unavailable for the satisfaction of pre-petition debt (other than for the categories noted in § 522(c) itself). … Moreover, it is a basic principle of bankruptcy law that exemptions are determined when a petition is filed. To interpret § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle and its relationship to the fresh start policy of the Bankruptcy Code.

*In re Cunningham*, 513 F.3d at 324 (internal citations omitted). While state exemption statutes identify property that an individual debtor may claim as exempt from the claims of certain creditors, "the Bankruptcy Code is not required to take those exemptions with all of the built-in limitations provided by the state exemption." *Id.*, 513 F.3d at 323 n.10 (citing *Owen*, 500 U.S. at 313-314, where the Supreme Court held that notwithstanding Florida's exemptions law did not protect real property from pre-existing judgment liens that attached

---

[14] The exceptions include certain taxes and custom duties, domestic support obligations, unavoidable liens, debts for breach of fiduciary duty to a federal depository institution, and debts for fraud in obtaining financial assistance for higher education. 11 U.S.C. § 522(c)(1)-(4).

before the subject property acquired its homestead status, given the equivalency of treatment accorded federal and state exemptions by § 522(f), such judgment liens may nevertheless be avoided as impairing the debtor's state homestead exemption).

Suitably, § 522(c) advances the bankruptcy "fresh start" policy by safeguarding the New York homestead exemption in the proceeds from a voluntary postpetition sale provided a debtor owned and occupied her home on the petition date. "Even though the payment of a homestead exemption from the proceeds of such voluntary sales is not provided for under New York law, such a payment is routinely made to debtors as part of the administration of their bankruptcy case. It is done in recognition of the debtor's proper claim of a homestead exemption under section 522 and in furtherance of the 'fresh start policy' of the Bankruptcy Code." *In re Bedell*, 173 B.R. 463, 466 (Bankr. W.D.N.Y. 1994) (while recognizing that surplus money resulting from a prepetition mortgage foreclosure sale is not protected by CPLR § 5206, the court held, pursuant to § 522(c) and the Bankruptcy Code's fresh start policy, property that was properly exempt is no longer available for the payment of prepetition debt and the debtor is entitled to her claimed homestead exemption when the property is sold post-petition regardless of whether it was a voluntary or involuntary sale). The rulings made by the bankruptcy courts in the Second Circuit that have addressed this issue - *Bedell*, *Martiny*, *Bellafiore*, and *Apergis* - are consistent with the fresh start policy behind § 522(c).

To support his claim that the proceeds from a voluntary sale of exempt property after the petition date lose their exempt status, the trustee cites two decisions by the Fifth Circuit Court of Appeals, *Hawk v. Engelhart (In re Hawk)*, No. 16-20641, 2017 U.S. App. LEXIS 13034 (5th Cir. July 19, 2017)[15] and *In re Frost*, 744 F.3d 384 (5th Cir. 2014). He cites to these two decisions for the proposition that the failure to reinvest the proceeds of exempt property

---

[15] 864 F.3d 364 (5th Cir. 2017).

voluntarily liquidated postpetition within the time period allowed under Texas exemption law leaves the proceeds non-exempt. In particular, the trustee cites *Hawk* for the proposition that the "snapshot rule" referenced in *Bellafiore* and *Apergis* was repudiated by the Fifth Circuit, leaving the courts free to consider events occurring after the petition date when asked to determine whether property has been properly claimed as exempt. The Court notes that the Fifth Circuit's July 19, 2017 decision in Hawk was superseded by a subsequent decision dated September 5, 2017. *Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287 (5th Cir. 2017) (reversing the bankruptcy court's order directing the debtors to turnover funds from an individual retirement account liquidated post-petition that were not rolled over into a similarly exempt account within the requisite 60-day period as the funds did not become property of the debtors' converted chapter 7 bankruptcy estate).

The relevant discussion in *Hawk* focuses on the prior ruling by the Fifth Circuit in *Frost* where it held that, notwithstanding the "snapshot rule" under *Owen*, the debtor lost the homestead exemption because he failed to reinvest the proceeds of the postpetition sale of his homestead in another homestead within the requisite six-month period -- the six-month reinvestment limit on the exemption was an integral feature of Texas exemption law and was applicable on the petition date. *Frost*, 744 F.3d at 387. Texas has an unlimited homestead exemption and the six-month conditional or vanishing exemption for reinvestment of cash proceeds applies equally to both voluntary and involuntary sales. Tex. Prop. Code Ann. § 41.001(c) (West 2001). The Fifth Circuit in its reissued *Hawk* decision noted that in *Frost* the chapter 13 debtor sold his exempt homestead postpetition, and thus (i) his interest in the homestead was converted to a conditionally exempt interest in the monetized proceeds of the sale and (ii) under § 1306(a)(1), such property, i.e., the sale proceeds, acquired by the debtor postpetition is property of the estate, subject to the conditional exemption. There is no provision similar to § 1306(a)(1) in chapter 7, and once property is properly exempt in a

chapter 7 case, that property, albeit property of the estate, remains with the debtor and is not administered by the bankruptcy trustee "even if the debtor acquires the new property interest by transforming a previously exempted asset into a nonexempt one." *Hawk*, 871 F.3d at 296. The Fifth Circuit in *Hawk* also referenced its prior decision in *In re Zibman*, 268 F.3d 298 (5th Cir. 2001). In *Zibman*, the Fifth Circuit held that because the chapter 7 debtors failed to reinvest the proceeds from the sale of their homestead within the requisite six-month period lost the homestead exemption in the sale proceeds. Like the debtors in *Santiago*, the debtors in *Zibman* sold their homestead prepetition, and their interest in the cash proceeds at the time the bankruptcy case was filed remained subject to Texas' six-month conditional exemption. *Hawk*, 871 F.3d at 296 (stating that if the debtors in *Zibman* had owned the homestead at the time their bankruptcy case was filed, the homestead would have been subject to an unconditional exemption under Texas law).

It is also interesting to note that the Fifth Circuit in *Frost* did not address the § 522(c) discussion in *Cunningham* and *Gamble*. Rather, the Fifth Circuit sought to distinguish the Texas homestead exemption statute from exemption statutes found in Massachusetts and in Georgia on the basis that a debtor's interest under the applicable law of those states remained the same despite a sale of the homestead, i.e., a "monetized interest in equity"; whereas under Texas exemption law, the debtor's interest in his homestead changes from an unconditional exemption in the residence itself regardless of value to a conditional exemption in monetized proceeds from the sale of that homestead – and the exemption expires if not timely reinvested in another homestead.[16] Tex. Prop. Code Ann. § 41.001 (West 2001). At the time *Cunningham*

---

[16] In 2010, Massachusetts amended its exemption statute so that the definition of a "home" that is subject to an estate of homestead includes the proceeds of both voluntary and involuntary sales. Mass. Gen. Laws ch. 188, § 1 et al. The exemption in proceeds is conditional up to the earlier of the debtor obtaining another homestead or one year from the date of the sale. Mass. Gen. Laws ch. 188, § 11(s). However, the Fifth Circuit did not address this aspect of Massachusetts exemption law in *Frost*, and New York does not have a similar conditional exemption that would lapse upon failure to reinvest the proceeds of a voluntary sale.

was decided, Massachusetts permitted an exemption of "[a]n estate of homestead to the extent of the declared homestead exemption in a home" and such "declared homestead exemption" was an exemption set in the amount of $300,000.[17] Mass. Gen. Laws. Ch. 188, §1 et al (West 2011). Similarly, Georgia's exemption statute provides that "[t]he debtor's aggregate interest, not to exceed $21,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence" is exempt for purposes of bankruptcy. Ga. Code Ann. § 44-13-100. New York's exemption statute resembles that of Massachusetts and Georgia. CPLR § 5206(a) exempts a monetized interest in "[p]roperty … not exceeding [$165,550][18] … in value above liens and encumbrances, owned and occupied as a principal residence".

Lastly, the trustee asserts that the debtor does not need the cash proceeds from the sale of her home in order to avail herself of the "fresh start" policy. He insists that the debtor can use the funds currently held in an individual retirement account to pay for new housing. Those funds aggregate approximately $200,000. *See* schedule A/B (property) [dkt. no. 1]. Again, the Court disagrees with the trustee's position. The fact that the debtor has exempt retirement funds does not affect whether she may properly claim the homestead exemption as the exemptions are mutually exclusive. The homestead exemption is governed by CPLR § 5206, whereas the exemption for individual retirement accounts under New York law falls under CPLR § 5205(c). Nothing in either CPLR § 5206 or CPLR § 5205 requires a debtor to choose between the two exemptions. Additionally, absent a finding of fraud, pre-bankruptcy planning on the part of a debtor in order to maximize exemptions does not preclude a debtor

---

[17] The "declared homestead exemption" is currently set in the amount of $500,000.  Mass. Gen. Laws, Ch. 188, § 1.

[18] As noted earlier, this is the value on the date the debtor filed her bankruptcy petition.

from properly claiming exempt status for assets owned at the time her bankruptcy case is filed. *Apergis*, 539 B.R. at 30; *Martiny*, 378 B.R. 54; *Bedell*, 173 B.R. at 466.

It is undisputed that on the petition date, the debtor owned and occupied the Lake Grove Property and that the Lake Grove Property was her principal residence. The debtor has resided at the Lake Grove Property for more than 35 years and has continued to live there after commencement of her bankruptcy case. Her bankruptcy schedules reveal no other residence or investment property. Because the debtor owned and occupied the Lake Grove Property as her principal residence on the date she filed her bankruptcy petition, the Court finds that the debtor has properly claimed the homestead exemption under applicable New York exemption law. If the debtor decides to voluntarily sell the Lake Grove Property during her bankruptcy case, the debtor's homestead exemption will be preserved under § 522(c) with respect to any net sales proceeds up to $165,550.

## III. CONCLUSION

For the foregoing reasons, the Court overrules the trustee's objection to the debtor's claimed homestead exemption. The homestead exemption set forth on schedule C (property claimed as exempt) to the debtor's bankruptcy petition is allowed.

So ordered.



**Dated: December 27, 2018**
**Central Islip, New York**

*Louis A. Scarcella*
**Louis A. Scarcella**
**United States Bankruptcy Judge**